IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| MICHAEL OGLESBY, ) | Case No. 2:09-2743-DCN-RSC |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | DEFENDANT'S REPLY |
| ) | IN SUPPORT OF ITS MOTION |
| NUCOR CORPORATION, ) | TO DISMISS |
| ) | |
| Defendant. ) | |
| ) | |

Defendant Nucor Corporation ("Nucor"), by its undersigned counsel, submits this Reply in Support of its Motion to Dismiss.

Both of Plaintiff's causes of action are fatally flawed. His intentional infliction of emotional distress claim fails because he has not alleged facts that would remove his claim from the purview of the Workers' Compensation Act, and his Title VII claim fails because he has not alleged facts suggesting that he was mistreated *because of* his sex. Nothing in Plaintiff's response alters these conclusions; therefore, Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief can be granted. In addition, Plaintiff's bare request for leave to amend his Complaint should be denied because he fails to set forth what new allegations any amendment would contain.

**I.      Plaintiff Fails To State a Claim for Intentional Infliction of Emotional Distress Because He Does Not Allege Intentional Mistreatment by an Alter Ego of Nucor.**

Pleading a claim for intentional infliction of emotional distress that is not preempted by the Workers' Compensation Act has two relevant requirements: (1) the employee must allege mistreatment at the hands of someone who qualifies as an "alter ego" of the employer, *Dickert v. Metro. Life Ins. Co.*, 428 S.E.2d 700, 701 (S.C. 1993), and (2) the employee must allege facts

suggesting that the company's alter ego acted with the specific intent to harm him, *Peay v. U.S. Silica Co.*, 437 S.E.2d 64, 65-66 (S.C. 1993).  Plaintiff's claim fails on both counts.

      **A.**     **Plaintiff Does Not Allege Mistreatment by an Alter Ego of Nucor.**

Plaintiff admits that his intentional infliction of emotional distress claim cannot survive unless the person who allegedly mistreated him was an "alter ego" of Nucor. (Pl.'s Resp. 9.) Plaintiff pleads, however, at most, only that he was mistreated by "a male co-worker" and that Plaintiff's "direct supervisor and other managers" were aware of such mistreatment. (Compl. ¶¶ 6, 7, 14, 16.)  These allegations stop well short of pleading "factual content that allows the court to draw the reasonable inference" that any of these persons were alter egos of Nucor. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

At the outset, it is important to note that an "alter ego" under South Carolina law is not merely someone with authority to act for the company; rather, it is a person who effectively *is* the company. *Dickert*, 428 S.E.2d at 701.  Indeed, the South Carolina Supreme Court expressly rejected the argument that a person with "supervisory" authority qualifies as an alter ego. *Id.* As that Court has held, an alter ego claim "requires a showing of *total domination and control*" by the alleged alter ego over the entity at issue. *Colleton County Taxpayers Ass'n v. Sch. Dist. of Colleton County*, 638 S.E.2d 685, 692 (S.C. 2006) (emphasis added).  In the employment context, alter ego claims can only succeed where the alleged tortfeasor is a "*dominant* corporate owner[] or officer[]" of the employer. *Dickert*, 428 S.E.2d at 701 (quoting 2A Larson, Workmen's Compensation §§ 68.21 & 68.22) (emphasis added)).

Given that Nucor is a large public company without a majority shareholder, it is doubtful that anyone dominates it to the point of being its alter ego under South Carolina law.[1]  It is even

---

[1] As Nucor's public filings reflect, it is headquartered in Charlotte, North Carolina, and has annual sales of $23.66 billion and upwards of 21,700 employees.

more unlikely anyone employed at the Huger, South Carolina, facility at which Plaintiff worked would meet this definition. Indeed, it does not appear that a South Carolina appellate court has ever held someone to be an alter ego of a public company for purposes of the Workers' Compensation Act. If viable at all in this context (and it probably is not), an alter ego claim can only be effective against the company's highest-level officers, such as its President or CEO. *See, e.g.*, *McSwain v. Shei*, 402 S.E.2d 890 (S.C. 1991) (holding that the president of the employer corporation was its alter ego).

With these principles in mind, it is evident that Plaintiff's Complaint does not allege the commission of any tort by an alter ego of Nucor.[2] Plaintiff contends that his "managers" could be alter egos of the company (Pl.'s Resp. 9-10), but this claim fails because nothing in the Complaint suggests that Plaintiff's "managers" had that kind of dominant authority. Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff's "labels and conclusions" are not entitled to the presumption of truth. Rather, plaintiffs must plead actual facts that plausibly suggest liability. *Id.* at 557. Thus, merely using the label, "managers," is insufficient to raise an inference that the alleged wrongdoers were alter egos of Nucor. Moreover, "manager" is a nebulous term that could refer to any number of individuals employed by a company, the vast majority of whom are merely "supervisory employees," not "dominant corporate owners or officers" who have "total domination and control" over the company. *Dickert*, 428 S.E.2d at 701; *Colleton County Taxpayers Ass'n*, 638 S.E.2d at 692. Because Plaintiff has not pleaded any facts plausibly suggesting that these "managers" were anything more than run-of-the-mill

---

[2] Plaintiff appears to concede that neither the alleged harasser (whom he calls "Jimmy") nor his "direct supervisor" qualify as alter egos of Nucor, because he does not address them in his response brief. (Pl.'s Resp. 10-11.) Instead, he focuses on the contention that Plaintiff's "managers" could be alter egos of the company. (*Id*.) In any event, an attempt to portray Jimmy, who was merely a "co-worker" of Plaintiff, or Plaintiff's "direct supervisor" as alter egos of Nucor would fail because nothing in the Complaint suggests that they were "dominant corporate owners or officers" of the company. *Dickert*, 428 S.E.2d at 701.

supervisory employees, he fails to state a claim upon which relief can be granted.[3]  *Dickert*, 428 S.E.2d at 701.

Nonetheless, Plaintiff argues that *Palmer v. House of Blues Myrtle Beach Restaurant Corp.*, No. 05-3301, 2006 WL 2708278 (D.S.C. Sept. 20, 2006), militates against granting Nucor's motion.  But *Palmer* is inapposite because the court in that case expressly held that whether the complaint at issue alleged sufficient facts to sustain an intentional infliction of emotional distress claim was "not presently before [it]."  *Id.* at *4.  Here, whether Plaintiff's allegations are sufficient to make out an intentional infliction of emotional distress claim is precisely the issue raised by Nucor's Motion to Dismiss.  Thus, *Palmer* is of no help, and Plaintiff's Complaint should be dismissed.[4]

---

[3] Plaintiff attempts to suggest that these "managers" might be alter egos of Nucor because, according to Wikipedia, Nucor has a relatively decentralized management structure.  (Pl.'s Resp. 9.)  This argument has numerous problems.  First, Plaintiff cannot rely on matters outside of his Complaint.  *See Dickey v. Greene*, 729 F.2d 957, 958 (4th Cir. 1984) (holding that court should not consider matters outside the pleadings on a motion to dismiss).  Second, Wikipedia hardly qualifies as a reliable source of information.  Third, the cited material merely states that many day-to-day decisions are made by lower-level managers, which falls well short of suggesting that they are "dominant corporate owners or officers" with near-complete control over the company.  *Dickert*, 428 S.E.2d at 701; *Colleton County Taxpayers Ass'n*, 638 S.E.2d at 692.  Thus, even if considered, nothing in Wikipedia bolsters Plaintiff's claim.

[4] Moreover, *Palmer* is an excellent example of a case that may have been correctly decided under *Conley v. Gibson*, 355 U.S. 41 (1957), but would not survive under *Twombly*, 550 U.S. at 555, and *Iqbal*, 129 S.Ct. at 1944.  In *Palmer*, the plaintiff did not allege harassment by an alter ego of the employer, but the Court held that harassment by an alter ego was a "set of facts that could be proved consistent with the allegations" in the complaint.  *Palmer*, 2006 WL 2708278, at *4 n.1.  Under *Twombly* and *Iqbal*, merely alleging facts "consistent with" liability is insufficient.  *Twombly*, 550 U.S. at 557 ("The need at the pleadings stage for allegations plausibly suggesting (*not merely consistent with*) [liability] reflects the threshold requirement of Rule 8(2)(a) . . . ." (emphasis added)); *Iqbal*, 129 S.Ct. at 1949 (noting that pleading facts that are "merely consistent with" liability is not enough to survive a motion to dismiss).  Instead, the burden is on plaintiffs to allege facts that "raise a reasonable expectation" of liability.  *Twombly*, 550 U.S. at 556.  Plaintiff cannot meet this burden by skirting the issue of whether he was intentionally harmed by an alter ego of Nucor; rather, to "raise a right to relief above the speculative level," he must plead facts affirmatively suggesting that he was.  *Id.* at 555.  Because he has not done so, his Complaint fails to state a claim upon which relief can be granted.

### B. Plaintiff Does Not Allege that any "Managers" Acted with the Specific and Deliberate Intent To Harm Him.

Even if the "managers" referenced in Plaintiff's Complaint were alter egos of Nucor (and they are not), Plaintiff does not allege facts suggesting that that these "managers" intentionally harmed him. At most, he alleges that they were "aware" of the alleged misconduct and "took no action." (Compl. ¶¶ 14, 16.) However, an employer's misconduct is covered by the Workers' Compensation Act (and thus not susceptible to civil suit) unless the employer acted with "a deliberate or specific intent to injure" the employee. *Peay v. U.S. Silica Co.*, 437 S.E.2d 64, 65-66 (S.C. 1993). Under this standard, "[e]ven if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering employees to perform an extremely dangerous job, willfully failing to furnish a safe place to work, willfully violating a safety statute, failing to protect employees from crime, refusing to respond to an employee's medical needs and restrictions, or withholding information about worksite hazards, the conduct still falls short of the kind of actual intention to injure" required to remove the conduct from the purview of the Workers' Compensation Act. *Edens v. Bellini*, 597 S.E.2d 863, 871 (S.C. Ct. App. 2004) (citation omitted).

Applying *Edens*, Plaintiff's allegation that his "managers" knew about his purported mistreatment falls well short of alleging any specific intent to harm. Indeed, South Carolina courts have dismissed complaints that alleged more. For example, in *Washington v. Hilton Hotels Corp.*, No. 07-2694, 2008 WL 747792 (D.S.C.. Mar. 17, 2008), the court held that an employee's allegation that her supervisor *actively encouraged* a co-employee to harass her did not "rise to the level of suggesting the actual intention to injure" required to remove the plaintiff's intentional infliction of emotional distress claim from the purview of the Workers' Compensation Act. *Id.* at *8. If alleging that a supervisor actively encouraged harassment of an employee is not enough to plead a specific intent to harm, then, *a fortiori*, merely alleging a

supervisor's knowledge that an employee was being harassed is plainly insufficient, and Plaintiff's claim must be dismissed. *Id.*

Indeed, Plaintiff's own hypothetical demonstrates his misunderstanding of the standard for alleging intentional acts. He claims that this case is "akin to a manager, who had just watched an employee lose an arm to a faulty textile machine, send[ing] that same employee to that same machine." (Pl.'s Resp. 12.) But South Carolina courts hold that claims against an employer for "*knowingly* permitting a hazardous work condition to exist," "*knowingly* ordering employees to perform an extremely dangerous job," and "*willfully* failing to furnish a safe place to work" are preempted. *Edens*, 597 S.E.2d at 871 (emphasis added) (citation omitted). Plaintiff's case is as faulty as his hypothetical: at most, he alleges that his "managers" knew of his plight but took no action, and South Carolina courts squarely hold that such claims are preempted by the Workers' Compensation Act and may not be considered by this Court. *Id.* Thus, Plaintiff fails to state a claim upon which relief can be granted, and his intentional infliction of emotional distress claim should be dismissed. *Id.*

## II. Plaintiff Fails To State a Claim for Sex Discrimination Because He Does Not Plead Facts Suggesting that He Was Mistreated Because of His Sex.

To state a Title VII sex discrimination claim, Plaintiff must plead facts that suggest that that he was mistreated *because of* his sex. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75. 78 (1998). Indeed, "[t]he critical issue [in a sex discrimination case]. . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment *to which members of the other sex are not exposed*." *Id*. at 80 (internal citations and quotation marks omitted) (emphasis added). In *Oncale*, the Supreme Court "distinguished between harassment that is *sexual in content* [which is not prohibited by Title VII], and harassment that is *sexually motivated* [which is prohibited]." *Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255, 260 (4th Cir. 2001) (interpreting *Oncale*). Here, though Plaintiff may have pleaded facts suggesting some

PPAB 1651015v3                                6

form of mistreatment that was sexual in content, he has not pleaded facts suggesting that such mistreatment was motivated by his sex.

In opposite-sex harassment cases, it is enough for the plaintiff to plead "explicit or implicit proposals of sexual activity [because] it is reasonable to assume those proposals would not have been made to someone of the same sex." *Oncale*, 523 U.S. at 80. However, according to the Supreme Court, "the same chain of inference" is not available to a plaintiff alleging same-sex harassment; rather, he must allege something more that links the alleged misconduct to his gender. *Id.* That something more can be "that the harasser was homosexual," or "that the victim [was] harassed in such sex-specific and derogatory terms by another [man] as to make it clear that the harasser is motivated by general hostility to the presence of [men] in the workplace," or "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Id.* at 80-81. The "evidentiary route" is not important; what is important is that the plaintiff plead some facts that link the alleged misconduct to his sex. *Id.* at 81. Otherwise, the plaintiff is left with a "chain of inference" that the Supreme Court has held to be insufficient.[5] *Id.* at 80.

Here, Plaintiff is stuck with an incomplete chain of inference. To be sure, he has alleged that a co-worker, "Jimmy," engaged in sexually explicit conduct, but he has not alleged that

---

[5] According to Plaintiff, Nucor's interpretation of *Oncale* as requiring something more than allegations of sexually explicit conduct to maintain a same-sex harassment case is "creative[]" and "wholly incorrect." (Pl.'s Resp. 6.) These characterizations are puzzling given that Nucor's understanding of *Oncale* tracks the interpretations given to that opinion by the Fourth Circuit in *Lack* and several District Courts in this Circuit. *See, e.g.*, *Lack*, 240 F.3d at 261 (following *Oncale* and holding that sexually explicit conduct is not enough to sustain a same-sex harassment claim); *Montano v. Inova Health Care Servs.*, No. 08-565, 2008 WL 4905982, at *5 (E.D. Va. Nov. 12, 2008) (dismissing same-sex harassment claim because pleaded facts were insufficient to suggest causal link between mistreatment and employee's sex); *English v. Pohanka of Chantilly, Inc.*, 190 F. Supp. 2d 833, 843 (E.D. Va. 2002) (holding that *Oncale* identified the three evidentiary routes discussed in the main text for demonstrating causal link between mistreatment and employee's sex in same-sex harassment cases).

Jimmy was homosexual,[6] nor has he alleged facts showing that Jimmy was motivated by a general hostility toward men, nor has he alleged facts showing that Jimmy treated men comparatively worse than women. As a result, Plaintiff's Title VII claim must be dismissed for failure to state a claim upon which relief can be granted. *See Oncale*, 523 U.S. at 80-81.

### III.    Plaintiff's Bare Request for Leave To Amend His Complaint Is Improper.

As an afterthought, Plaintiff requests "leave to amend [his Complaint] to meet whatever standard is adopted by this Court" on the grounds that "[t]he unclear state of the law is a proper justification for amendment." (Pl.'s Resp. 13.) This request is improper because Plaintiff neither attaches a draft amended complaint nor explains what new facts would be alleged therein. Though leave to amend a complaint "shall be freely given when justice so requires," the Court is obligated to evaluate whether a proposed amendment would be futile before granting the motion. *Steinburg v. Chesterfield County Planning Comm'n*, 527 F.3d 377, 390-91 (4th Cir. 2008) (affirming denial of motion for leave to amend complaint where proposed amendment would be futile). Plaintiff's failure to describe his proposed amendment in any detail has deprived the Court of any means of making that determination. In addition, Nucor is unaware of any facts that Plaintiff can plead in good faith to revive either of his claims. Accordingly, Plaintiff's request for leave to amend his complaint in some unspecified manner should be denied. *See id.*

---

[6] In fact, Plaintiff claims in his response that Jimmy might be bisexual. (Pl.'s Resp. 7.) This statement demonstrates the incompleteness of Plaintiff's chain of inference. Though a homosexual harasser presumably targets members of one sex because of their sex, a bisexual harasser presumably targets members of both sexes, and thus does not violate Title VII by exposing "members of one sex . . . to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale*, 523 U.S. at 80; *see also Lack*, 240 F.3d at 262 (rejecting same-sex harassment claim because alleged harasser engaged in sexually explicit conduct with men and women); *English*, 190 F. Supp. 2d at 847 (same). Similarly, a heterosexual person's mistreatment of a member of his same sex would presumably be based on something other than sex. Because Plaintiff cannot plead that Jimmy is homosexual, and instead is admittedly forced to leave open the possibility that he is heterosexual or bisexual, his allegations fall short of plausibly suggesting a connection between the alleged mistreatment and Plaintiff's sex. *See Oncale*, 523 U.S. at 80-81.

## IV. Conclusion.

For the foregoing reasons, as well as those set forth in Nucor's Motion to Dismiss, Plaintiff's Complaint should be DISMISSED with prejudice, and his request for leave to amend his Complaint should be DENIED.

Respectfully submitted,

s/ J. Walker Coleman, IV
J. Walker Coleman, IV (Fed. ID No. 6007)
Email: walkercoleman@parkerpoe.com
Joshua W. Dixon (Fed. ID No. 10036)
Email: joshdixon@parkerpoe.com
PARKER POE ADAMS & BERNSTEIN LLP
200 Meeting Street, Suite 301
Charleston, SC  29401
Phone:  843-727-2650
Fax:  843-727-2680

Cary A. Farris (Fed. ID No. 25150)
Texas State Bar No. 24011536
Brian G. Patterson (Fed. ID No. 4042740307)
Texas State Bar No. 24042974
ALANIZ & SCHRAEDER, L.L.P.
2500 CityWest Blvd., Suite 1000
Houston, TX  77042
Phone:  281-833-2200
Fax:  281-833-2240

ATTORNEYS FOR DEFENDANT
NUCOR CORPORATION

February 3, 2010

Charleston, South Carolina